ACCEPTED
03-14-00454-CR
4252879
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/23/2015 4:46:40 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00454-CR

**IN THE**

**COURT OF APPEALS**

**FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/23/2015 4:46:40 PM
JEFFREY D. KYLE
Clerk

_____

**CLIFTON CREWS HOYT,**

**Appellant.**

**VS.**

**THE STATE OF TEXAS,**

**Appellee.**

_____

**From the 391ST Judicial District Court**
**Tom Green County, Texas**
**Honorable Tom Gossett, Judge Presiding**

_____

**BRIEF OF STATE**

_____

**STATE WAIVES ORAL ARGUMENT**

> **Richard Villarreal**
> **Assistant District Attorney**
> **51st Judicial District**
> **124 W. Beauregard, Suite B**
> **San Angelo, Texas 76903**
> **(325) 659-6583**
> **TSB #00797602**
> **ATTORNEY FOR STATE**

# TABLE OF CONTENTS

**PAGE**

LIST OF AUTHORITIES ............................................................................2

STATEMENT OF THE FACTS ..................................................................5

ISSUE ONE ..............................................................................................8
    SUMMARY OF THE ARGUMENT ......................................................8
    ARGUMENT AND AUTHORITIES........................................................8

ISSUE TWO ............................................................................................14
    SUMMARY OF THE ARGUMENT ....................................................14
    ARGUMENT AND AUTHORITIES......................................................14

PRAYER ..................................................................................................27

CERTIFICATE OF COMPLIANCE ...........................................................28

CERTIFICATE OF SERVICE...................................................................28

# LIST OF AUTHORITIES

*Cases*

*Allen v. State*, 249 S.W.3d 680 (Tex. App.—Austin 2008, no pet.)    15, 16

*Amores v. State,* 816 S.W.2d 407 (Tex. Crim. App. 1991)    9

*Annis v. State,* 578 S.W.2d 406 (Tex. Crim. App. 1979)    17

*Brinegar v. United States*, 338 U.S. 160 (1949)    8

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010)    15

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011)    14

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)    15

*Compton v. State,* 120 S.W.3d 375 (Tex. App.—Texarkana 2003, pet. ref'd).    25

*Crittenden v. State,* 899 S.W.2d 668 (Tex. Crim. App. 1995)    13

*Davis v. State,* 947 S.W.2d 240 (Tex. Crim. App. 1997)    8

*Emerson v. State,* 880 S.W.2d 750 (Texas. Crim. App. 1994)    20

*Gaddis v. State,* 753 S.W.2d 396 (Tex. Crim. App. 1988)    19

*Garcia v. State,* 43 S.W.3d 527 (Tex. Crim. App. 2001)    9, 13

*Jackson v. Virginia,* 443 U.S. 307 (1979)    15, 16

*Laster v. State,* 275 S.W.3d 512 (Tex. Crim. App. 2009)    15

*Matthews v. State,* No. 03-13-00037-CR, 2014 Tex. App. LEXIS 13722, (Tex. App.—Austin Dec. 23, 2014)(mem. op., not designated for publication)    15

*Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004)    15

*State v. Garrett,* 22 S.W.3d 650 (Tex. App.—Austin [3[rd] Dist.] 2000, no pet.)    9

*State v. Long,* No. 03-11-00725-CR 2012 Tex. App. LEXIS 4402 (Tex. App.—Austin May 31, 2012) (mem. op., not designated for publication)    20

*Taylor v. State,* No. 03-03-00624-CR 2006 Tex. App. LEXIS 5148 (Tex. App.—Austin June 16, 2006)(mem. op., not designated for publication)    21

*Vaugn v. State,* 493 S.W.2d 524 (Tex. Crim. App. 1972)      20

***Statutes***

Tex. Code Crim. Proc. Ann. art. 38.04.      15

Tex. Penal Code Ann. § 49.01      16

Tex. Penal Code Ann. § 49.01 (2)      16

Tex. Penal Code Ann. § 49.04      14, 16

Tex. Penal Code Ann. § 49.09      16

Tex. R. Evid. 701      20

Tex. R. Evid. 702      20

Tex. Transp. Code Ann. § 545.101(a)      9, 10

Tex. Transp. Code Ann. § 724.061      19

NO. 03-14-00454-CR

IN THE

COURT OF APPEALS

FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

_____

CLIFTON CREWS HOYT,

Appellant.

VS.

THE STATE OF TEXAS,

Appellee.

_____

From the 391ST Judicial District Court
Tom Green County, Texas
Honorable Tom Gossett, Judge Presiding

_____

BRIEF OF STATE
_____

TO THE HONORABLE COURT OF APPEALS FOR THE THIRD
SUPREME JUDICIAL DISTRICT OF TEXAS:

COMES NOW, The State of Texas, in the above entitled and numbered cause, and files this the BRIEF OF STATE and in support thereof, the State would show this Honorable Court as follows:

## STATEMENT OF THE FACTS

San Angelo Police Department patrol officer Bruce Stewart was patrolling in the southwest section of San Angelo on March 6, 2010. (R.R. Vol. 2, p. 22). At approximately 2:21 a.m., Officer Stewart was dispatched to a Whataburger restaurant on Sherwood Way in reference to an intoxicated driver. (R.R. Vol. 2, p. 23).

Officer Stewart obtained a description of the suspect's vehicle from the dispatcher. (R.R. Vol. 2, p. 23). No such vehicle was located at the restaurant, but the vehicle was quickly located by the officer on Alexander Street. (R.R. Vol. 2, p. 23). The vehicle was traveling north down Alexander toward Houston Harte. (R.R. Vol. 2, p. 23). Officer Stewart observed the vehicle make a wide right turn onto Houston Harte. (R.R. Vol. 2, p. 24). After observing this traffic offense, Officer Stewart turned on his overhead emergency lights. (R.R. Vol. 2, p. 24). Officer Stewart then observed the vehicle veer to the north side of the Houston Harte roadway and strike the curb. (R.R. Vol. 2, p. 24). Officer Stewart then observed that the vehicle started pulling to the south side, and as it came to a stop, it struck the south side curb. (R.R. Vol. 2, p. 24).

Officer Stewart then approached Appellant's vehicle and spoke to Appellant, who was the driver of the vehicle. (R.R. Vol. 2, pp. 24-25).

5

Officer Stewart then asked Appellant if he had been drinking. Appellant said he had not been drinking. (R.R. Vol. 2, p. 26). Officer Stewart observed that Appellant's eyes were red and bloodshot. (R.R. Vol. 2, p. 26). Officer Stewart smelled the odor of an alcoholic beverage coming from Appellant's person. (R.R. Vol. 2, p. 26).

At this point, Officer Stewart decided to bring Appellant out of his vehicle and administer standardized field sobriety tests. (R.R. Vol. 2, pp. 26-27).

The first test administered by Officer Stewart was the horizontal gaze nystagmus test. (R.R. Vol. 2, p. 28). This test has six possible clues. (R.R. Vol. 2, p. 31). Officer Stewart observed six of the six possible clues. (R.R. Vol. 2, p. 31).

The next test administered by Officer Stewart was the walk and turn test. (R.R. Vol. 2, p. 32). The walk and turn test is a divided attention test consisting of an instruction stage, followed by the subject taking nine heel to toe steps up a line, turning around and returning down the line with nine heel to toe steps. (R.R. Vol. 2, pp. 32-33). This test has eight possible clues. (R.R. Vol. 2, p. 34). Officer Stewart observed six of the eight possible clues. (R.R. Vol. 2, p. 34).

The next test administered by Officer Stewart was the one leg stand. (R.R. Vol. 2, p. 35). The one leg stand test involves a subject raising their foot approximately six inches off the ground; once the foot is raised, it should remain raised, and the subject should be counting out loud by one thousands until told to stop by the officer. (R.R. Vol. 2, p. 35). This test has four possible clues. (R.R. Vol. 2, p. 36). Officer Stewart observed three of the four possible clues. (R.R. Vol. 2, p. 36).

Officer Stewart then placed Appellant under arrest for driving while intoxicated. (R.R. Vol. 2, p. 37). Officer Stewart then conducted a search of Appellant's person incident to the arrest. (R.R. Vol. 2, p. 37). Officer Stewart located less than two ounces of marihuana in Appellant's left back pants pocket. (R.R. Vol. 2, p. 37). An inventory of Appellant's vehicle located a marihuana cigarette. (R.R. Vol. 2, p. 37).

Officer Stewart read Appellant his statutory warnings. (R.R. Vol. 2, p. 38). Once Officer Stewart had read Appellant his statutory warning, he asked Appellant to provide a sample of his breath or blood. (R.R. Vol. 2, p. 38). Appellant refused to provide a sample of either his breath or blood. (R.R. Vol. 2, p. 39).

Appellant was transported to jail by Officer Stuart. (R.R. Vol. 2, p. 39).

## ISSUE ONE

Whether there was probable cause and reasonable suspicion to initiate a traffic stop and detain Appellant for the purpose of conducting Standardized Field Sobriety Tests?

## SUMMARY OF THE ARGUMENT

There was reasonable suspicion or probable cause to initiate a traffic stop for violation of a traffic law. Upon contact with the driver of the stopped vehicle, the officer noted additional information which gave him reasonable suspicion to conduct an intoxication investigation.

## ARGUMENT AND AUTHORITIES

In order to justify a traffic stop, there must be reasonable suspicion that a traffic violation has occurred. *Davis v. State,* 947 S.W.2d 240, 242-244 (Tex. Crim. App. 1997).

Probable cause exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense. *Brinegar v. United States*, 338 U.S. 160, 164 (1949). Probable

8

cause must be examined in light of the totality of the circumstances established by the evidence. *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); *State v. Garrett,* 22 S.W.3d 650, 653-654 (Tex. App.—Austin [3rd Dist.] 2000, no pet.).

Reasonable suspicion exists when an officer observes specific objective, articulable facts which, in light of the officer's experience and personal knowledge, together with inferences from those facts, would warrant a reasonable person to believe a traffic violation had occurred. *See Davis v. State,* 947 S.W.2d 240, 242-243 (Tex. Crim. App. 1997). This standard is an objective one, there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. The reasonable suspicion determination is made by considering the totality of the circumstances. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Tex. Transp. Code Ann. § 545.101(a) requires an operator making a right turn to make both the approach and the turn as closely as practicable to the right hand curb or edge of the roadway.

The evidence in this case shows that Officer Stewart was dispatched at approximately 2:21 in the morning to a Whataburger in reference to an intoxicated driver. (R.R. Vol. 2, p. 22). That while in the area he got behind

Appellant's vehicle and followed it.  Officer Stewart observed that as the vehicle was going northbound on Alexander, it made a wide right turn onto Houston Harte.   (R.R. Vol. 2, pp. 23-24).  Officer Stewart described the roadway onto which Appellant turned as a two lane access road with both lanes going in one direction.  Further testimony established that Appellant's turn was so wide that he wound up in the left hand lane of the two lane roadway and then remained in that lane. (R.R. Vol. 2, pp. 45-46).

At this point, Officer Stewart has personally observed a traffic violation, namely a violation of Tex. Transp. Code Ann. § 545.101(a), and would therefore not only have reasonable suspicion but probable cause to stop the vehicle for this violation of the law.

Officer Stewart did not observe a "slight" wide right turn, rather the undisputed evidence at trial showed that Appellant made such a wide right turn that he actually wound up in the left hand lane of a two lane road and then remained in that lane.   Clearly, when a vehicle makes such a wide turn as to wind up in the wrong lane there can be no question but that an unlawful wide right turn has occurred.

The evidence further shows that once Officer Stewart had activated his emergency lights to stop Appellant's vehicle for the traffic violation, he observed that Appellant's vehicle veered to the north side of Houston

Harte, struck the curb, and then it started pulling to the south side, and as it came to a stop, it struck the south side curb." (R.R. Vol. 2, p. 24). Officer Stewart also later testified that Appellant, "… hit the curb pretty hard on the north side. Then, when he came back over to the right, as he was coming to a stop, he hit the right curb." (R.R. Vol. 2, p. 46).

After making contact with Appellant, who was the driver of the vehicle, Officer Stewart noted that Appellant's eyes were red and bloodshot and that he smelled the odor of an alcoholic beverage coming from Appellant's person. (R.R. Vol. 2, p. 26).

Officer Stewart now has the following information: he has observed Appellant commit a traffic offense, he has observed driving which is commonly indicative of intoxicated driving namely a wide turn, turning into the wrong lane, striking a curb, striking a curb on the other side of the roadway, the odor of alcohol from Appellant, red blood shot eyes, and the fact that the stop occurred at 2:20 in the morning, a time commonly known to be when bars and nightclubs have just closed.

Officer Stewart, who initially had justification to stop and detain Appellant's vehicle based on probable cause that a traffic violation had occurred, now has sufficient reasonable suspicion to begin an intoxication investigation.

11

And indeed only when all of this information, the totality of the circumstances, is available to him does Officer Stewart have Appellant exit the vehicle to begin his intoxication investigation. (R.R. Vol. 2, pp. 26, 51).

Appellant spends a large portion of his argument dealing with the initial dispatch and whether there was a reliable tip and whether Officer Stewart had probable cause or reasonable suspicion to "initiate a DWI traffic stop", however none of those arguments are relevant in this case. Officer Stewart did not initially stop Appellant based on a DWI traffic stop, he stopped Appellant's vehicle because Appellant violated the law by committing a traffic violation. It was after pulling Appellant over for this traffic violation that Officer Stewart was able to make additional observations about Appellant sufficient to justify expanding the initial detention into a reasonable suspicion investigation of intoxication.

Appellant's arguments are flawed because they do not consider cases such as this, where an initial stop based on a traffic violation expands into an intoxication investigation once an officer has made additional observations. An officer would be severely hamstrung if he could not expand an initial traffic stop into an intoxication investigation after obtaining additional information and combining this additional information with all the other facts known to him.

Appellant, through his argument, attempts to extrapolate Officer Stewart's alleged subjective beliefs to a legal argument. Appellant's arguments are based on the proposition that Officer Stewart stopped this vehicle solely because he believed the driver of the vehicle was intoxicated and argues therefore that if there was no reasonable suspicion or probable cause for a DWI traffic stop then there was no valid stop. However, it is clear that a stop will not be invalidated based on the subjective motivation of a police officer so long as there is an objectively valid basis for the stop. *Crittenden v. State,* 899 S.W.2d 668, 673 (Tex. Crim. App. 1995). The standard to justify a traffic stop is an objective one; there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Regardless of whether Officer Stewart initially and subjectively believed that an intoxicated person was driving the vehicle he was following, there was an objective traffic offense that justified the initial traffic stop.

Officer Stewart had probable cause to stop Appellant's vehicle for violation of a traffic offense. Once Officer Stewart stopped the vehicle, he observed additional facts which when combined with all the other

information available to him reached a sufficient level of reasonable suspicion to allow him to expand the stop into an intoxication investigation.

## ISSUE TWO

Whether the legal and factual evidence was sufficient at trial that the Appellant was driving while intoxicated pursuant to Tex. Penal Code Ann. § 49.04.

## SUMMARY OF THE ARGUMENT

The evidence was sufficient to sustain a conviction for driving while intoxicated.

## ARGUMENT AND AUTHORITIES

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

In Texas, evidence to support a verdict is legally sufficient if viewed in a light most favorable to the verdict, the evidence, and all reasonable inferences there from would allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Brooks v. State,* 323

14

S.W.3d 893, 912 (Tex. Crim. App. 2010). The Court will review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson v. Virginia,* 443 U.S. 307, 318 (1979); *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Matthews v. State,* No. 03-13-00037-CR, 2014 Tex. App. LEXIS 13722, at 8,9 (Tex. App.—Austin Dec. 23, 2014)(mem. op., not designated for publication).

In determining the legal sufficiency of the evidence, the Court must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State,* 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State,* 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). The trier of fact, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton,* 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. Ann. art. 38.04. Thus, when faced with a record of historical facts that supports conflicting inferences, a reviewing court must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that

resolution. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Allen,* 249 S.W.3d at 689. The role of a court reviewing a sufficiency argument is not that of a fact finder but rather as a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen*, 249 S.W.3d at 688.

Appellant was found guilty of the offense of felony driving while intoxicated. The elements of the offense of driving while intoxicated under Tex. Penal Code Ann. § 49.04 are that Appellant was operating a motor vehicle in a public place while intoxicated. Further under Tex. Penal Code Ann. § 49.09, to be punished as a felony offense, the State had to show that Appellant had two prior convictions for driving while intoxicated.

Appellant limits his sufficiency argument to the element of intoxication. Intoxication is defined in Tex. Penal Code Ann. § 49.01 (2) as not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a

16

combination of two or more of those substances, or any other substance into the body or by having an alcohol concentration of 0.08 or more.

Appellant attempts to limit Apellee's evidence of intoxication to two items: 1) Officer Stewart's observations of Appellant in the immediate moments after the officer initiated the traffic stop and Appellant's performance of the SFST. (Appellant Brief, p.14). Appellant's argument is flawed from the beginning, because he incorrectly limits the scope of the State's evidence of intoxication. Officer Stewart made his determination that Appellant was intoxicated not just on the two items Appellant has chosen to argue but based on his observations from beginning to end, on the totality of the entire incident. (R.R. Vol. 2, pp. 72-73).

As a general rule, the testimony of a peace officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication. See *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979).

The fact finder in this case, when considering the element of intoxication, under the totality of the circumstances would have had the following information: That Officer Stewart observed Appellant commit a traffic offense. This traffic offense consisted of making a wide right turn. Officer Stewart testified that the turn was so wide that Appellant turned into

17

the left lane of a two lane roadway and remained in that lane. (R.R. Vol. 2, pp. 45-46). Officer Stewart observed Appellant's vehicle strike a curb pretty hard. Appellant's vehicle then crossed the roadway and struck the curb on the other side of the roadway as he pulled over. (R.R. Vol. 2, pp. 24,46). Officer Stewart noted the odor of alcohol from Appellant and that Appellant had red blood shot eyes. (R.R. Vol. 2, p. 26). The stop occurred around 2:21 a.m. (R.R. Vol. 2, p. 22), a time commonly known to be when bars and nightclubs have just closed. Further Officer Stewart had been dispatched to the area in reference to an intoxicated driver. (R.R. Vol. 2, p. 23). Officer Stewart observed that Appellant denied drinking any alcohol even though Officer Stewart could smell the odor of an alcoholic beverage coming from his person. (R.R. Vol. 2, p. 26). Office Stewart's observations of Appellant's performance on the field sobriety tests including six out of six possible clues on the Horizontal Gaze Nystagmus test. (R.R. Vol. 2, p. 32). During the Walk & Turn test, Officer Stewart observed Appellant step out of the starting position during the instruction phase, observed him start the test before being told to start, observed him miss heel to toe steps during the test, observed him use his arms for balance, observed him step off the line and observed him make an improper turn. Officer Stewart observed six out of eight possible clues on the Walk & Turn test. (R.R. Vol. 2, pp. 32-

18

34). During the One Leg Stand test, Officer Stewart observed Appellant use his arms for balance, observed him put his foot down and observed him sway with his body. Officer Stewart observed three out of four possible clues on the One Leg Stand test. (R.R. Vol. 2, pp. 35-36). Appellant refused to provide a sample of his breath or blood after his statutory warnings were read to him. (R.R. Vol. 2, pp. 38-39). Texas courts have held that intoxication is a legitimate deduction from a defendant's refusal to take a breath test. *Gaddis v. State,* 753 S.W.2d 396, 399-400 (Tex. Crim. App. 1988). A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial. Tex. Transp. Code Ann. § 724.061.

Appellant argues that the odor of alcohol alone is insufficient to prove intoxication and that the presence of bloodshot eyes alone is insufficient to prove intoxication. However, as the State has already said, Officer Stewart did not rely on any one particular piece of evidence to make his determination of intoxication rather he looked at his observations from beginning to end. Appellant attempts to make a "piecemeal" argument stating that a particular piece of evidence by itself is not sufficient proof of intoxication. However, when looking at the sufficiency of evidence, this

Court should not use a "divide-and-conquer" or "piecemeal" approach to the evidence. Evidence should be reviewed in totality not in isolation. *State v. Long,* No. 03-11-00725-CR 2012 Tex. App. LEXIS 4402 at 18-19 (Tex. App.—Austin May 31, 2012) (mem. op., not designated for publication).

Appellant next cites *Emerson v. State,* 880 S.W.2d 750, 769 (Texas. Crim. App. 1994) for the proposition that "a properly administered SFST is admissible scientific evidence under Tex. R. Evid. 702." (Appellant Brief, p. 15). Appellant improperly attempts to extend the scope of the holding of *Emerson*. *Emerson* dealt only with the horizontal gaze nystagmus test (HGN) which is only one of the three standardized field sobriety tests. Further, the lay opinion of a police officer is admissible as to the officer's observations and to prove a defendant's intoxication. *Emerson,* 880 S.W.2d at 763; *Vaugn v. State,* 493 S.W.2d 524, 525 (Tex. Crim. App. 1972). Therefore, it is possible that a psychomotor field sobriety test such as the one leg stand (and by extension the walk and turn test) would be admissible as lay testimony under Tex. R. Evid. 701 and relevant as testimony about a suspect's coordination, balance and mental agility problems exhibited during the psychomotor field sobriety test grounded on an officer's common knowledge. *Taylor v. State,* No. 03-03-00624-CR 2006 Tex. App. LEXIS 5148 at 16-18 (Tex. App.—Austin June 16, 2006)(mem.

20

op., not designated for publication). Therefore, even if Appellant's next argument that Officer Stewart "violated most of the SFST protocols" and that these were not "slight variations" but rather "went to the very reliability of the intoxication determination" and any observations from these SFSTs should be excluded from consideration as unreliable scientific evidence was a valid argument, the trial court could still have considered Officer Stewart's observations as lay testimony.

However, the State does not agree that Officer Stewart "violated most of the SFST protocols". Appellant makes the broad, sweeping argument that Officer Stewart: "violated most of the SFST protocols", that they were not "slight variations", that Officer Stewart's administration of the SFST was completely flawed and finally that the tests were " horrifically flawed SFST". (Appellant Brief, pp.15-16,18). Appellant did not present any evidence at trial, did not cite any legal authority, did not call any expert witnesses, did not present any documentation, did not introduce any version of the NHTSA SFST Student Manual to support his broad allegations that these were "horrifically flawed SFST."

Appellant's first example of Officer Stewart's violation of Standardized Field Sobriety Testing procedures is that "Officer Stewart could not state how many SFSTs he had conducted or even place an estimate on the

21

number." (Appellant Brief, p. 15). This statement is very misleading because it implies that Officer Stewart could not tell us how many of the three standardized field sobriety tests he gave to Appellant on the date of this particular incident. The question that had been put to Officer Stewart, however, dealt with the number of occasions on which he had administered the standardized field sobriety tests to other individuals and then released them. (R.R. Vol. 2, p. 55). The exact or estimated number of individuals that Officer Stewart had released on other occasions after administering the standardized field sobriety tests and determining they were not intoxicated has absolutely nothing to do with the procedure or protocol for any of the three standardized field sobriety tests.

Appellant next argues that "distractions", such as the patrol vehicle's emergency lights, passing traffic, and allowing another officer to walk by and around Appellant resulted in a "completely flawed" SFST, specifically the HGN test. Appellant again makes this allegation without any actual evidence, documentation, or case law to support Appellant's argument. Appellant in no way makes any showing that these "potential" distractions did in fact distract Appellant and therefore affect the tests. A potential distraction is in fact a hypothetical distraction unless and until evidence is presented that Appellant was in fact affected by the distraction. Even if

there had been any evidence showing that Appellant was, in fact, in any manner "distracted", then Appellant would still only be able to argue that this should affect the weight a fact finder would give the evidence.

Officer Stewart was asked during cross examination, "..what I am asking you is, the environment that you put him in which would have allowed for some of these distractions was not the ideal situation for you to perform these nystagmus tests, correct?" (R.R. Vol. 2, p. 59). Officer Stewart replies, "I guess there could have been a better environment, but I worked with what I had..." (R.R. Vol. 2, p. 59). Standardized Field Sobriety Tests such as the HGN test are field tests. They are used by Officer Stewart and other law enforcement officers not in a laboratory environment but out in the field. Officers are expected to give these tests in a variety of locations; from the side of a roadway to a parking lot and at a variety of times from the middle of the day to the middle of the night. An officer must not only observe and analyze the behavior of the person being tested but must also insure the safety of the officer himself  of the person being tested as well as the general public. When an officer is in the field there will always be possible or potential distractions. Standardized field sobriety tests are field tests designed to be used in such an environment.

23

Officer Stewart was certified to administer the Horizontal Gaze Nystagmus test. (R.R. Vol. 2, p. 29). Officer Stewart testified that during the HGN test he had his stimulus 12 to 15 inches from Appellant, was very close to Appellant, was looking in his eyes while performing the test, and that Appellant's eyes were fixated on the pen that was held in front of him. (R.R. Vol. 2, pp. 74, 75). If there had been a distraction that affected the test, certainly an officer looking directly at Appellant's eyes from 12 to 15 inches would have been able to recognize that there was a problem. Testifying as an expert witness in regards to the HGN test, Officer Stewart testified that the HGN testing of Appellant, "was reliable as far as I am concerned, just from my observations." (R.R. Vol. 2, p. 61). Further, Officer Stewart, after being asked, "okay. and it's your testimony that all these distractions didn't have, as far as you are concerned, they didn't have any impact on the nystagmus tests at all?" states "Not from what I observed, no sir." (R.R. Vol. 2, p. 63).

Appellant continues his "distractions" argument with the walk and turn test. Appellant argues that Officer Stewart gave further instructions during the walk and turn test and that these instructions invalidated the results of the test. (Appellant Brief, p. 16). Officer Stewart testified he believed he had given Appellant clear instructions for performing the walk and turn test.

24

(R.R. Vol. 2, pp. 34, 64). The alleged distraction Appellant complains of consisted of Officer Stewart reinstructing Appellant after Appellant has failed to follow Officer Stewart's initial instructions. (R.R. Vol. 2, pp. 64-65). Appellant makes no actual showing that Appellant was in fact distracted, presents no documentation, no expert testimony, no case law stating that reminding Appellant of the original instructions is anything other than a slight variation in the administration of the test that would not render the evidence unreliable. It would seem that if anything reminding Appellant of the original instructions after he has failed to follow instructions would actually help him perform the test. As Appellant admits in his brief, slight variations in the administration of portions of the SFST does not render the evidence unreliable but may affect the weight of the testimony and certainly it is up to the fact finder listening to the testimony to determine the weight to give such evidence. *Compton v. State,* 120 S.W.3d 375, 378 (Tex. App.— Texarkana 2003, pet. ref'd).

As a continuation of his "distractions" argument, Appellant argues that Officer Stewart "interfered" with the one-leg stand. The alleged interference, which Appellant does not specify in his brief, is Officer Stewart telling Appellant to point his toes several times. (R.R. Vol. 2, p. 70). Again Appellant makes no actual showing that Appellant was in fact distracted,

presents no documentation, no expert testimony, no case law supporting the position that telling a person to point his toes during the test is anything other than a slight variation in the administration of the test that would not render the evidence unreliable. As Appellant admits in his brief, slight variations in the administration of portions of the SFST does not render the evidence unreliable but may affect the weight of the testimony and certainly it is up to the fact finder listening to the testimony to determine the weight to give such evidence.

Appellant again in an attempt to limit the State's evidence of intoxication argues that, "Officer Stewart stated that the incidents of the traffic stop--wide right turn, brushing a curb, bloodshot eyes, and an odor of alcohol were not indicators of intoxication." (Appellant Brief, p. 18). This is clearly a mischaracterization of what Officer Stewart said. Officer Stewart agreed that any one of these events by themselves would not necessarily be indicators of intoxication. However, he also went on to testify that he did not rely on any one particular event to determine that Appellant was intoxicated rather he looked at, "my observations from beginning to end, that's what I based the arrest on." (R.R. Vol. 2, p. 72). "Right, from beginning to end, that's what I based it on. The totality of the entire incident." (R.R. Vol. 2, p. 73).

The evidence presented to the trial court was sufficient to sustain Appellant's conviction for driving while intoxicated. The trial court as trier of fact was the arbitrator of credibility and weight given to evidence. The trial court held that Officer Stewart's testimony was uncontradicted and credible. (R.R. Vol. 2, p. 88).

For the foregoing reasons, the State respectfully requests this Court overrule the Appellant's Issues Presented.

## PRAYER

WHEREFORE, the State prays this Court overrule all issues presented by Appellant and Affirm the Judgment of the trial court for the reasons stated herein.

Respectfully Submitted,

ALLISON PALMER
51ST DISTRICT ATTORNEY

_____
Richard Villarreal
Assistant District Attorney
51ST & 119th Judicial District
124 W. Beauregard, Suite B
San Angelo, Texas 76903
(325) 659-6583
TSB# 00797602
ATTORNEY FOR STATE

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based upon the computer program used to generate this brief, that this brief contains 4,974 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count. I further certify that this brief is in a conventional 14-point typeface.

_____
Richard Villarreal
Assistant District Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Brief of State was electronically served on John T. Floyd (jfloyd@johntfloyd.com) and Christopher M. Choate (choate@johntfloyd.com), The Kirby Mansion, 2000 Smith Street, Houston, TX 77002, counsel for Appellant on the 23rd day of February, 2015.

_____
Richard Villarreal
Assistant District Attorney